IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

RACHEL MYRICK,

      **Plaintiff,**

v.                                                                                                               Civil Action No. 3:19cv609

**RARE HOSPITALITY**
**INTERNATIONAL, INC.,** *et al.,*

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Rachel Myrick's Motion to Remand. (ECF No. 15.) Defendants RARE Hospitality International, Inc. ("RARE"), FCPT Hospitality Properties, LLC ("FCPT"), and Darden Restaurants, Inc. ("Darden") (collectively, the "Restaurant Defendants") responded, (ECF No. 24), and Myrick replied, (ECF No. 25). Myrick's Complaint, (ECF No. 1-2), also brings claims against Southpoint II, LLC ("Southpoint"), W.J. Vakos & Company ("Vakos"), W.J. Vakos Management Company ("Vakos Management") (collectively, the "Developer Defendants"), and Kevin Linton.

The materials before the Court adequately present the facts and legal contentions, and oral argument would not aid the decisional process. Accordingly, the matter is ripe for disposition. For the reasons stated below, the Court will grant the Motion to Remand.[1]

---

[1] Prior to the filing of the Motion to Remand, the Restaurant Defendants, the Developer Defendants, and Linton each filed a motion to dismiss for failure to state a claim. (ECF Nos. 3, 5, 9.) Because this Court lacks jurisdiction due to a lack of complete diversity, it will take no action on these motions.

## I. Standard of Review

### A. Removal Jurisdiction & Remand

Under 28 U.S.C. § 1441(a),[2] a defendant may remove a civil action to a federal district court if the plaintiff could have originally brought the action in federal court. 28 U.S.C. § 1441(a). Section 1446 delineates the procedure for removal. *See* 28 U.S.C. §§ 1446(a), (d). The state court loses jurisdiction upon the removal of an action to federal court. 28 U.S.C. § 1446(d) ("[T]he State court shall proceed no further unless and until the case is remanded."). The removability of a case "depends upon the state of the pleadings and the record at the time of the application for removal...." *Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) ("the right to remove ... [is] determined according to the plaintiffs' pleading at the time of the petition for removal."). Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"The party seeking removal bears the initial burden of establishing federal jurisdiction." *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11cv182, 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). No presumption favoring the existence of federal subject matter jurisdiction exists because federal courts have limited, not general, jurisdiction. *Id.* (citing *Pinkley Inc. v.*

---

[2] Section 1441(a) provides, in pertinent part:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

*City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)). In deference to federalism concerns, courts must strictly construe removal jurisdiction. *Id.* (citing *Mulcahey*, 29 F.3d at 151). "If federal jurisdiction is doubtful, a remand is necessary." *Id.* (quoting *Mulcahey*, 29 F.3d at 151).

A federal district court has diversity jurisdiction over "all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . [c]itizens of different states." 28 U.S.C. § 1332(a)(1). Federal diversity jurisdiction requires complete diversity of citizenship. *Abraham*, 2011 WL 1790168 at *2 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990)); *see also* 28 U.S.C. § 1332(a)(1). "[T]he 'citizenship of each plaintiff [must be] diverse from the citizenship of each defendant.'" *Abraham*, 2011 WL 1790168, at *2 (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (second alteration in original)).

### B. The Fraudulent Joinder Doctrine

The fraudulent joinder doctrine operates as an exception to the complete diversity requirement, permitting a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, and dismiss the nondiverse defendants, thereby retaining jurisdiction. *Abraham*, 2011 WL 1790168, at *2 (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "To show fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (alteration in original) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). "The party alleging fraudulent joinder bears a heavy burden – it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* "This standard is even more favorable to the plaintiff than the standard for ruling on

a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Id.* "Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id.* at 426; *see also Allard v. Laroya*, 163 F. Supp. 3d 309, 311 (E.D. Va. 2016). In making this determination, the Court is not bound by the allegations in the pleadings, but may consider the entire record. *Mayes*, 198 F.3d at 464.

## II. Factual and Procedural Background

### A. Procedural History

On July 10, 2019, Myrick filed the Complaint in the Circuit Court of the County of Henrico, Virginia (the "Henrico Circuit Court"), seeking damages for personal injuries pursuant to state law negligence claims. Myrick served all Defendants, last serving Darden on July 26, 2019. (Not. Removal. ¶¶ 2–4.) The Defendants filed various responsive in the Henrico Circuit Court. On August 20, 2019, the Restaurant Defendants timely removed this action from the Henrico Circuit Court to this Court, claiming diversity jurisdiction and that the Restaurant Defendants and Linton were fraudulently joined. (ECF No. 1.)

On September 3, 2019, Myrick filed the instant Motion to Remand, claiming that full diversity does not exist because she, the Developer Defendants, and Linton are citizens of Virginia. On September 17, 2019, the Restaurant Defendants responded in opposition to the Motion to Remand. On September 20, 2019, Myrick replied.

### B. Summary of Allegations in the Complaint[3]

This personal injury action arises from a copperhead snake bite that Myrick sustained inside a Longhorn Steakhouse in Fredericksburg, VA (the "Restaurant") on September 12, 2017.

---

[3] On a Motion to Remand that requires the Court to decide whether fraudulent joinder occurred, the Court resolves all issues of law and fact in the plaintiff's favor. *Hartley*, 187 F.3d at 424.

4

On that date, Myrick alleges that she entered the foyer of the restaurant when "a juvenile Virginia Copperhead bit [her] on the left foot, causing her to suffer over time substantial pain and serious bodily injury." (Compl. ¶¶ 68–70.) Prior to that date, Myrick alleges that each of the Defendants were on notice—or should have been on notice—that there were venomous snakes on the Restaurant property and in the surrounding areas. Myrick seeks twenty-five (25) million dollars in damages jointly and severally against all Defendants, plus pre and post-judgment interest. (*Id.* 50.)

Relevant for the purposes of the Motion to Remand, Myrick brings a claim of common-law negligence against the Developer Defendants.[4] In 2001, Southpoint acquired a 264 acre property (the "Property") in Spotsylvania County, Virginia which it "designed and developed . . . into a commercial business community." (Compl. ¶¶ 11, 13.) Myrick further alleges that Developer Defendants—Southpoint, Vakos, and Vakos Management—"graded the Property, provided for erosion and sediment control, provided for a means of controlling storm water, [and] provided for water and sewer." (*Id.* ¶ 15, 18, 21.) As part of this effort, the Developer Defendants built a "a man-made storm water retention pond" that borders the 1.5-acre portion of land—purchased by the Restaurant Defendants in February 2006—on which the Restaurant sits. (*Id.* ¶ 48.) Myrick alleges that the retention pond was "surrounded by tall, thick vegetation planted, installed, and/or maintained by" the Developer Defendants. (*Id.* ¶¶ 50, 53, 56.)

The Complaint explains that Virginia Copperheads "frequently hibernate in dens made of rocks" and "give birth near an established hibernation den." (*Id.* ¶¶ 63–64.) Myrick observes that the southside of the Restaurant, bordering the retention pond, contained decorative boulders

---

[4] The Complaint also contests actions taken by the other named Defendants, stating that each entity or person breached its duty of care towards Myrick. Because resolution of the Motion to Remand requires an analysis of only the allegations against the Developer Defendants, the Court need not evaluate the contentions against the Restaurant Defendants or Linton.

and plantings. (*Id.* ¶ 59.) Myrick attaches pictures showing the rocky outcroppings along with several aerial photographs of the retention pond and the Restaurant that show the small gap between the two parcels of land. (See *id.* ¶¶ 58, 60.)

Myrick alleges that the Developer Defendants "knew or reasonably should have known that the retention pond and its surrounding vegetation adjacent to the Restaurant created a habitat for Venomous Snakes," such as the juvenile Virginia Copperhead that bit Myrick. (*Id.* ¶¶ 188, 203, 218.) Given the hibernation and birthing tendencies of Virginia Copperheads, Myrick contends that it "was foreseeable to [the Developer Defendants] that one or more Venomous Snakes would migrate from [the retention pond] to the premises of the Restaurant, where it/they would pose an unreasonable danger to patrons of the Restaurant." (*Id.* ¶¶ 191, 207, 221.)

Myrick alleges the Developer Defendants breached their duty of care to Myrick and other members of the public when they: (1) "negligently designed, constructed, and maintained" the retention pond near the restaurant; (2) failed to "use ordinary care in the design, construction, and choice of location of the retention pond;" (3) failed to "use ordinary care in the maintenance, upkeep, and inspection of [the retention pond]. . . to control the Venomous Snake population;" (4) failed to "take reasonable steps, such as using snake fencing or a chemical barrier . . . to prevent the Venomous Snakes from migrating;" (5) failed to "warn others in the vicinity and within reach of its conduct . . . of the latent danger of Venomous Snakes in the area;" (6) failed to "secure the services of a pest/snake inspection, control, and elimination provider;" and, more generally, (7) failed to "take other reasonable steps to protect individuals in the vicinity, such as Plaintiff, from an unreasonably dangerous condition on their property that could cause injury to others on adjacent land." (*Id.* ¶¶ 193, 208, 223.)

## III. Analysis

The Restaurant Defendants removed this case to federal court, positing that, although Myrick, Linton, and the Developer Defendants are citizens of Virginia, this Court has subject matter jurisdiction based on diversity. Specifically, the Restaurant Defendants argue that Myrick fraudulently joined Linton and the Developer Defendants because no possibility exists that Myrick could recover against them. (Resp. Mot. Remand 2, ECF No. 24.) Because the Restaurant Defendants cannot show that no possibility exists that Myrick might bring a plausible cause of action against the Developer Defendants, the Court must remand the action to the Henrico Circuit Court for lack of subject matter jurisdiction.

### A. Legal Standard: Negligence and Landowner Liability

The law of general negligence, landowner liability, and duty are well-settled in Virginia. "The finding of a legal duty is a prerequisite to a finding of negligence." *Quisenberry v. Record No. 171494 Huntington Ingalls, Inc.*, 818 S.E.2d 805, 809 (Va. 2018) (internal citations omitted). The question of whether a duty in tort exists "is a pure question of law." *Volpe v. City of Lexington*, 708 S.E.2d 824, 827 (Va. 2011). "The imposition of a duty is nothing more than a threshold requirement that if satisfied, merely opens the courthouse doors." *RGR, LLC v. Settle*, 764 S.E.2d 8, 20 (Va. 2014) (internal citations omitted). Once a court determines that a duty exists, the jury weighs the evidence and determines whether the duty has been performed. *See id.* at 20.

"The common law requires that every person must exercise ordinary care in the use and maintenance of his [or her] own property to prevent injury to others." *Quisenberry*, 818 S.E.2d at 809-10 (internal citations omitted). The duty to exercise ordinary care "is not abstract: a specific course of conduct gives rise to a specific duty extending to specific persons." *Id.* at 810

(citing *Dudley v. Offender Aid & Restoration of Richmond, Inc.*, 401 S.E.2d 878, 883 (Va. 1991). While the duty extends to a specific person, it does not "depend on proving a particular relationship." *RGR*, 764 S.E.2d at 19. Rather, it "arises from that basic and necessary regulation of civilization which forbids any person because of his [or her] own convenience, to recklessly, heedlessly or carelessly injure another." *Id.* (quoting *Louisville & Nashville R.R. Co. v. O'Neil*, 89 S.E. 862, 866 (Va. 1916)). "Whenever the circumstances . . . are such that an ordinary prudent person could reasonably apprehend that, as a natural and probable consequence of his [or her] act, another person rightfully there will be in danger of receiving an injury, a duty to exercise ordinary care to prevent such injury arises. *Id.* at 19 (internal citations omitted); *see also Dudley*, 401 S.E.2d at 882–83 (for an actor to be deemed negligent, he or she "must create a recognizable risk of harm to the other individually, *or to a class of persons—as, for example, all persons within a given area of danger*—of which the other is a member") (quoting *Restatement (Second) of Torts* § 281).

While a landowner does not owe a duty with respect to natural conditions on the land, the landowner may be "subject to . . . others *outside of the land* for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of such harm." *RGR*, 764 S.E.2d at 17–18 (citing *Restatement (Second) of Torts* § 364 (1965)) (emphasis added). In other words, landowners may not use their land in such a way that creates an unreasonable danger to others traveling on adjoining land.

### B. Myrick Alleges a Plausible Claim of Negligence Against the Developer Defendants for Creating An Artificial Danger That Created a Risk of Harm

Myrick alleges a plausible claim of negligence against the Developer Defendants sufficient to provide, at the very least, the "glimmer of hope" necessary to defeat diversity jurisdiction. *Hartley*, 187 F.3d at 424. In Virginia, a landowner assumes a duty to use ordinary

8

care "whenever the circumstances . . . are such that an ordinary prudent person could reasonably apprehend that, as a natural and probable consequence of his [or her] act, another person rightfully there will be in danger of receiving an injury." *RGR*, 764 S.E.2d at 19 (internal citations omitted).

Myrick alleges facts sufficient to plausibly establish that the Developer Defendants owed her a duty of care. Specifically, she alleges that the Developer Defendants *acted* negligently when they planned, built, and maintained the artificial retention pond on the Property, thereby creating habitat for venomous snakes. Taking the facts in a light most favorable to Myrick, an "ordinary prudent person"—knowing the proclivities of Virginia Copperheads to migrate across land and favor rocky areas—could have reasonably apprehended that "another person rightfully" traveling near the Restaurant would "be in danger of receiving an injury."[5] *Id.*

---

[5] The Restaurant Defendants contend that "[t]he duty on which Plaintiff bases her claim against the Developer Defendants cannot arise out of ownership of land, but instead, must arise from one's use of its personal property." (Resp. Mot. Remand 10, ECF No. 24). In particular, the Restaurant Defendants claim that *RGR*—which involved the stacking of lumber so as to create visibility problems near a railroad intersection—stands only for the proposition that actors must "safely use personal property" and does not involve land-ownership. (*Id.*)

The Restaurant Defendants argue for too fine a parsing of Virginia liability law. While *RGR* involved the negligent use of personal property, the Virginia Supreme Court explicitly relied on a number of cases which found an actor could be held liable for injuries to third parties when they use their land in a negligent fashion. *See RGR* 764 S.E.2d at 17. For example, the *RGR* court cited a portion of an opinion from the United States Court of Appeals for the Seventh Circuit in which the court found that "a person may not use his *land* in such a way as unreasonably to injure the interests of persons not on his *land*—including owners of adjacent *lands*." *See Justice v. CSX Transp., Inc.*, 908 F.2d 119, 123-24 (7th Cir. 1990) (emphases added). Negligence law in Virginia does not require a court to create rigid divisions between the use of one's personal property and one's land. As the Virginia Supreme Court put it four years after *RGR*:

> [w]hile RGR concerns a defendant landowner and a plaintiff who is injured adjacent to the land, it is neither a premises liability case nor unique to real property, but based firmly in general negligence principles. *RGR* invoked precedent from negligence cases addressing real property, personal property, and conduct and is one of this Court's benchmarks in the area of general negligence.

9

Viewing Myrick's allegations in a favorable light, the Developer Defendants "directly and foreseeably exposed [the Restaurant's customers] to the risk of bodily harm," which means that Myrick has sufficiently indicated the existence of a legal duty under Virginia law. *Dudley*, 401 S.E.2d at 882–83. Having established the existence of a legal duty, this Court cannot then weigh the evidence underlying Myrick's claims at the current procedural posture. *See RGR*, 764 S.E.2d at 20. The Court has identified a "glimmer of hope for the plaintiff" and its jurisdictional inquiry must end. *Hartley*, 187 F.3d at 424.

In the Notice of Removal, the Restaurant Defendants counter that Myrick fraudulently joined the Developer Defendants because the snake, as a wild animal, "was *ferae naturae*[6] for which a landowner may not be held liable in tort." (Not. Removal ¶ 38, ECF No. 1; Resp. Mot. Remand 10, ECF No. 24.) The common law doctrine of *ferae naturae* generally posits that a "landowner cannot be held liable for the acts of . . . wild animals, occurring on his or her property unless the landowner has actually reduced the wild animals to possession or control, or introduced a non-indigenous animal into the area." *Belhumeur v. Zilm*, 949 A.2d 162, 164–165 (N.H. 2008) (quoting *Nicholson*, 986 S.W.2d at 60). However, the intricacies of that doctrine are far from settled, and do not categorically bar Myrick's claims in the case at bar.

Neither party cites any Virginia federal or state case applying *ferae naturae* in the context of a negligence claim, and the case law applying it is sparse. The courts that have addressed the doctrine generally agree that a landowner may not be held in *strict* liability for the acts of wild

---

*Quisenberry*, 818 S.E.2d at 809 fn 3. Based on those same general negligence principles that "every person must exercise ordinary care in the use and maintenance of his [or her] own property to prevent injury to others," Myrick plausibly alleges that the Developer Defendants owed a duty of care to those traveling on adjoining land. *Id.* at 809–810.

[6] The phrase *"ferae naturae"* literally means "animals of a wild nature or disposition." *Nicholson v. Smith*, 986 S.W.2d 54, 60 (Tex. App. 1999).

animals. But notably "most courts which have considered the issue recognize the possibility that a claim for negligence may not be precluded by *ferae naturae per se.*" *Nicholson*, 986 S.W.2d at 61; *see also Restatement (Third) of Torts: Liab. for Physical & Emotional Harm* § 22 cmt. e ("[a] landowner is not subject to strict liability . . . if a rattlesnake on its own slithers onto the land and then attacks someone who has been invited onto the land. In such cases, the landowner, although not subject to strict liability, may be subject to negligence liability . . ."); *Booth v. State*, 83 P.3d 61, 65, 2004 (Ariz. Ct. App. 2004) ("[t]his [*ferae naturae*] case, however, sounds in negligence, not strict liability, and even cases relied upon by the state recognize that the doctrine does not completely bar liability for claims based on the negligence of the defendant"); *Carlson v. State*, 598 P.2d 969, 974 (Alaska 1979) ("[t]he few cases that have considered similar facts, however, appear to agree that, if a landowner knows that a wild animal is creating a dangerous situation on his property, he has a duty either to remove the danger or to warn the people who may be threatened by the danger.")[7]

Accordingly, the concept of *ferae naturae* does not categorically foreclose the possibility of liability against the Developer Defendants. In contrast to the cases above holding that ordinary negligence principles apply to an actor's conduct involving *ferae naturae*, the

---

[7] The fact that the injury occurred outside the Developer Defendants' land does not alter the above analysis. "The only 'relationship' which must exist [for a duty to arise] is a sufficient juxtaposition of the parties in time and space to place the plaintiff in danger from the defendant's acts." *Quisenberry*, 818 S.E.2d at 809–810. A landowner's negligence is not absolved as a matter of law simply because the hazardous condition, created by their use of the land, happens to harm someone on adjacent land. *See id.* at 811 ("a company's negligent discharge of toxic chemicals into a river would not result in an absence of duty to injured swimmers downstream merely because the harm to plaintiffs did not occur contemporaneously and geographically adjacent to defendant's actions."); *see also, Rice v. Turner*, 62 S.E.2d 24, 26 (Va. 1950) (finding "no error in the ruling of the trial court, instructing the jury that it was the duty of defendant to exercise ordinary care to prevent his cow from running at large beyond the boundaries of his own land" and injuring a motorist on an adjoining motorway).

Restaurant Defendants "cite[] no case in which a court has categorically barred negligence claims based on injuries caused by wild animals." *Booth*, 83 P.3d at 65. While the actions of wild animals may be unpredictable—thus potentially altering the foreseeability of harm from certain actions—"the doctrine has not been historically applied so as to *alter* the traditional analysis of a negligence claim." *Id.* (emphasis added). That principle holds particularly true here where Myrick asserts that the Developer Defendants took affirmative steps that attracted the wild animals in question to a heavily trafficked shopping center.[8] *See Nicholson*, 986 S.W.2d at 61 (finding no negligence where "the presence of [] fire ants" on the property "was not caused by any affirmative or negligent act of the [defendants]"). As such, the concept of *ferae naturae* does not completely bar Myrick from any possibility of recovery, and cannot support the Restaurant Defendants' claim of fraudulent joinder.

Because the Restaurant Defendants cannot show that no possibility exists that Myrick might bring a cause of action against the Developer Defendants, these removing defendants fail to meet their heavy burden to demonstrate that Myrick fraudulently joined the Developer Defendants in this action. *See Hartley*, 187 F.3d at 424. The Court concludes that complete diversity does not exist between parties. The Court lacks subject matter jurisdiction and must remand the case to the Henrico Circuit Court. 28 U.S.C. § 1447(c).

---

[8] The Court does not make any findings related to the likelihood of success of Myrick's claims against the Developer Defendants—or the other defendants—in the Henrico Circuit Court. *See Harris*, 2008 WL 4396231 at *4. In deciding the Motion to Remand, the Court finds only that the Restaurant Defendants failed to meet the heavy burden of establishing that no possibility exists that Myrick can bring a cause of action against the Developer Defendants. *Hartley*, 187 F.3d at 424.

## IV. Conclusion

For the foregoing reasons, the Court will grant Myrick's Motion to Remand. Because this Court lacks jurisdiction due to a lack of complete diversity, it will take no action on the three pending motions to dismiss. (ECF Nos. 3, 5, 9.) The Court declines to award fees. An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: January 13, 2020
Richmond, Virginia